■ In the Matter of VILLANI'S RESTAURANT, INC., CONCA D'ORO, Petitioner, v STATE LIQUOR AUTHORITY, Respondent.—Proceeding pursuant to CPLR article 78 to review respondent's determination, dated February 10, 1977, which, after a hearing, suspended petitioner's restaurant liquor license for 10 days and imposed a $1,000 bond claim. Determination confirmed and petition dismissed on the merits, with costs. No opinion. Damiani, Shapiro and O'Connor, JJ., concur; Martuscello, J. P., dissents and votes to grant the petition and annul the determination, with the following memorandum: There was more than enough evidence to support the respondent's findings that two of the petitioner's bartenders were engaged in helping one Carlo Torres take bets in the licensed premises on October 9, 10 and 11, 1974. However, in order to sustain the charge that the petitioner suffered or permitted gambling on the licensed premises in violation of subdivision 6 of section 106 of the Alcohol Beverage Control Law, it must be shown that the petitioner's management, which in this case was the owner, Gerardo Villani, knew that gambling was taking place or could, with reasonable diligence, have discovered those activities (see *Matter of Triple S. Tavern v New York State Liq. Auth.,* 40 AD2d 522, affd 31 NY2d 1006). The record is devoid of

evidence that Villani knew that gambling was taking place and there is no substantial evidence to show that he could, with diligent effort, have learned that it was taking place. Although it appears that Villani was on the premises while bets were being placed at the bar, it also appears that he spent almost all of his time working as the cook in a kitchen, which was separated from the bar by a large dining area. The respondent's hearing officer found that Villani could neither see nor hear what was happening in the bar while he was in the kitchen and that no gambling took place at the bar while Villani was there. Violations were found on the theories that (1) the bartenders who participated in the gambling were in charge of the bar and their knowledge may be imputed to the licensee and (2) Villani would have discovered the unlawful activities had he spent more time at the bar. The bartenders were neither officers nor managers of the licensee. They were left to attend to their duties while Villani attended to his. That fact, standing alone, does not clothe the bartenders with the kind of authority that would allow their knowledge to be imputed to the licensee (cf. *Matter of Martin v State Liq. Auth.,* 49 AD2d 941, affd 41 NY2d 78). It would be a manifest injustice to impute the knowledge of the bartenders to the licensee when the bartenders themselves were engaged in the unlawful activity without authorization or consent. The record does not show that Villani would have discovered the gambling had he exercised due diligence. Villani is a businessman and not a policeman. He had, on this record, no reason to suspect that his bartenders and some of his patrons were gambling and he could not simultaneously supervise the bar and attend to his work in the kitchen. While Villani's supervision of the bar may have left something to be desired, that alone is not enough to sustain the charges against him (cf. *Matter of Martin v State Liq. Auth., supra).* In the *Triple S.* case *(supra)* the owner spent 17 hours a day supervising his employees. That was not enough to prevent one of them from gambling during the brief periods of the owner's absence or to allow him to discover the wrongdoing. This record does not show that Villani would have been more successful. The Court of Appeals has said: "The gravamen of the charge under section 106 is the licensee's complicity, actual or implied, in permitting gambling" *(Matter of Leake v Sarafan,* 35 NY2d 83, 86). There is no evidence here that the licensee either participated in the gambling or acquiesced in it. In view of this lack of proof, the determination of the State Liquor Authority should be annulled.